UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

William B. Butler,                                    Civil No. 12-2697 (SRN/TNL)

        Plaintiff,

v.                                                    **MEMORANDUM OPINION
                                                      AND ORDER**

Federal National Mortgage Association,

        Defendant.

---

William B. Butler, Butler Liberty Law, LLC, 33 South Sixth St., Suite 4100, Minneapolis, Minnesota 55402, pro se.

Arthur L. Brown, Benjamin E. Gurstelle, and Mark G. Schroeder, Briggs & Morgan, P.A., 80 South Eighth St., Suite 2200, Minneapolis, MN 55402, for Defendant Federal National Mortgage Association.

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant's Motion to Dismiss [Doc. No. 8]. For the reasons stated below, the Court grants the Motion to Dismiss and dismisses the Complaint [Doc. No. 1-1] with prejudice.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff William B. Butler is an attorney who, in the past two years, has filed nearly 70 lawsuits on behalf of himself and others, seeking to invalidate foreclosures of residential mortgages. This is not the first time that Mr. Butler has sought to forestall eviction from his own home. His first lawsuit challenging the foreclosure of the mortgage on his home, Butler v. Bank of America, N.A., No. 11-cv-461 (DWF/TNL), was

dismissed by the Honorable Donovan W. Frank of this Court. That dismissal was affirmed by the Eighth Circuit Court of Appeals. 690 F.3d 959 (8th Cir. 2012). Indeed, Mr. Butler has thus far avoided dismissal in only two of the cases he has brought, and has been sanctioned nearly $200,000 in the process. Undeterred by adverse rulings and adverse binding precedent, Mr. Butler here continues to contend that the foreclosure of the mortgage on his home was legally deficient.

In his first Complaint (<u>Butler I</u>), Mr. Butler sued Bank of America and its servicing arm, BAC Home Loans Servicing, as well as a law firm that brought the foreclosure process in state court. The gravamen of the <u>Butler I</u> Complaint was Mr. Butler's now-discredited theory that an entity that does not hold the original note is not entitled to foreclose on the mortgage. (July 13, 2011, Order [11-cv-461 Doc. No. 46] at 2.) <u>See</u> <u>Butler</u>, 690 F.3d at 962 (characterizing the theory of the <u>Butler I</u> case as "flawed" and noting that the court "cautiously examined each of the sixteen causes of action the complaint advances" but "[found] no merit to any of them").

Mr. Butler insists that this challenge to the foreclosure process is different. The Complaint alleges that his mortgage,[1] although held by Mortgage Electronic Registration Systems, Inc. ("MERS") was actually in favor of "investor" Defendant Federal National Mortgage Association (known colloquially as Fannie Mae). (Compl. ¶¶ 3-4.) This mortgage was serviced by <u>Butler I</u> Defendant BAC Home Loans Servicing. (<u>Id.</u> ¶ 6.)

---

[1] The mortgage lists the borrowers as "William B. Butler and Mary S. Butler, as joint tenants, husband and wife." (Compl. Ex. 1 [Doc. No. 1-2] at 3.) There is no explanation why co-borrower Mrs. Butler is not included as a Plaintiff in this matter; she was a plaintiff in <u>Butler I</u>.

But, according to the Complaint, Fannie Mae and the servicer of its loans were contractually bound by a "Seller/Servicer Guide" that required the servicer of the mortgage to prepare an assignment of the mortgage to Fannie Mae. (Id. ¶ 12.) The Complaint alleges that BAC prepared this assignment and delivered it to Fannie Mae (id. ¶ 16) but that this assignment was never recorded. (Id. ¶ 17.) Plaintiff contends that not only did the assignment deprive BAC of the power to foreclose on the mortgage, but because a condition precedent to foreclosure is the recording of all assignments, there could be no foreclosure by any entity. (Id. ¶¶ 19-20.)

The Complaint does not allege when the foreclosure and sheriff's sale of Mr. Butler's property occurred, but documents in the public record show that sheriff's sale was accomplished on July 23, 2010, and that BAC was the successful bidder on Mr. Butler's home. (Schroeder Aff. [Doc. No. 11-1] Ex. D (Sheriff's Certificate of Sale and Foreclosure Record).) On September 7, 2010, the Complaint contends that BAC executed a quitclaim deed to the property in favor of Fannie Mae. (Compl. ¶ 26.) This deed was recorded in February 2011. (Id.) A writ of eviction was issued by the state court on October 4, 2010. (Id. ¶ 31.)

Fannie Mae commenced eviction proceedings against Mr. Butler in Minnesota state court in January 2011. In September 2011, the state court determined that the undisputed evidence established that Mr. Butler had failed to redeem the property within the statutory period for redemption and thus granted judgment in favor of Fannie Mae. (Schroeder Aff. Ex. L.) At Mr. Butler's request and after he posted a $22,000 bond, the

state-court eviction judgment was stayed, pending the Eight Circuit Court of Appeals' decision in Butler I. Immediately after the Eighth Circuit affirmed Judge Frank and denied Mr. Butler's petition for rehearing en banc, the state court directed the entry of judgment in Fannie Mae's favor and also directed that Fannie Mae retain the full amount of Mr. Butler's bond payment. (Id. Ex. M.) Mr. Butler filed this lawsuit two days later.

In the instant Complaint, which is ostensibly an action to quiet title under Minnesota law, Mr. Butler contends that he and not Fannie Mae or any other entity is the "owner of fee title and the sheriff's certificate of sale is void." (Compl. ¶ 30.) The Complaint does not explain how Mr. Butler, who has failed to pay anything toward his mortgage since at least 2010, retains the title to the undisputedly mortgaged property.[2] The Complaint contains only two counts: "Determination of Adverse Claims" under Minnesota's quiet title statute, Minn. Stat. § 559.01 (id. ¶ 37), and a request for three declaratory judgments: that the sheriff's sale and quitclaim deed are void, "whether Plaintiffs [sic] owe any obligation to [Fannie Mae]," and that Mr. Butler "remains the owner of the property in fee title." (Id. ¶ 38.)

Mr. Butler initially filed this lawsuit in state court. He requested a temporary restraining order against his eviction from the property. The state court judge issued an ex parte restraining order preventing the eviction. Fannie Mae then removed the lawsuit to this Court.

---

[2] In affirming Judge Frank's dismissal of Butler I, the Court of Appeals warned Mr. Butler that it "do[es] not take lightly attempts to manipulate the judicial process in a desperate strive to avoid the inevitable." Id. at 962 n.3.

4

## II. DISCUSSION

### A. Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiffs draw from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls

for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

**B.     The Merits of Mr. Butler's Quiet Title Claim**

    **1.     Failure to State a Claim**

The only substantive claim in the Complaint is Mr. Butler's quiet title, or "determination of adverse claims," count. Minnesota law provides that a person in possession of real property may "bring an action against another who claims an estate or interest therein . . . adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01.

Mr. Butler's claim here is that BAC did not comply with the requirements of its contract with Fannie Mae, or that BAC in fact assigned its interest to Fannie Mae and failed to record it. He thus contends that BAC did not have the authority to foreclose on his home in 2010, rendering Fannie Mae's claim to his property invalid under Minnesota law. The Complaint and the documents attached thereto, however, contain no facts to support this claim or render it remotely plausible. Moreover, even if the facts as pled sufficiently supported such a claim, Mr. Butler cannot establish that he has standing to challenge the alleged violation of a contract to which he is not a party or a third-party beneficiary. Mr. Butler's theory in this case is fundamentally flawed, if not outright frivolous, and must be dismissed.

As an initial matter, the Complaint contends that, at some point before the July 2010 foreclosure, Fannie Mae held an interest in Mr. Butler's mortgage that rendered

6

BAC an inappropriate party to pursue foreclosure. The "evidence" of this interest is the Complaint's Exhibit 2, which is a screen shot of the MERS loan finder website showing Fannie Mae as the "investor" for the mortgage. (Docket No. 1-2 at 17.) But the date of the screen shot is October 3, 2012, more than two years after the challenged foreclosure. Thus, this screen shot is only evidence that, on October 3, 2012, Fannie Mae had an interest in the mortgage. It does not establish the allegations in the Complaint; rather, it is just the sort of "shot in the dark" allegation that does not meet Rule 8's pleading standards. Blaylock v. Wells Fargo Bank, N.A., Civ. No. 12-693, 2012 WL 2529197, at *5 (D. Minn. June 29, 2012) (Montgomery, J.). Thus, the Complaint fails to plausibly allege that Fannie Mae had an interest in Mr. Butler's mortgage at the time of the foreclosure that rendered BAC's foreclosure illegal. Mr. Butler's current challenge to the foreclosure must be dismissed on this basis alone.

In addition, even if the Complaint was supported by some evidence indicating that Fannie Mae might have held an interest in the property at the time of the foreclosure, Mr. Butler still would have no quiet-title action against Fannie Mae. "To state a quiet-title claim, a plaintiff must state facts sufficient to allow the court to draw the reasonable inference that he or she is in possession of property and that a defendant claims a right or title to the property but has no such right or title." Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565, 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012) (Doty, J.) (emphasis added). As discussed, BAC was the successful bidder at the sheriff's sale of Mr. Butler's property. Because Mr. Butler did not redeem the property within the six-month period provided by Minnesota law, the sheriff's certificate of sale is "evidence of title in fee

7

thereunder in the purchaser at such sale, the purchaser's heirs or assigns." Minn. Stat. § 580.19. Fannie Mae is BAC's assignee for purposes of title to Mr. Butler's property, having received that property from BAC by quitclaim deed. Therefore, the sheriff's sale and the expiration of the redemption period operates to give Fannie Mae title in fee to the property, and Mr. Butler has come forward with no evidence that this title is invalid. See Karnatcheva v. JPMorgan Chase Bank, N.A., 704 F.3d 545, 548 (8th Cir. 2013) (affirming dismissal of quiet title claim "because the plaintiffs' pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation that . . . assignments of the notes were invalid"). The quiet title claim must therefore be dismissed.

There is another, more fundamental, reason to dismiss Mr. Butler's allegations. As noted, Plaintiff alleges that whatever transpired between BAC and Fannie Mae violated the requirements of the contract between the two entities. However, Mr. Butler was not a party to that contract. He points to no language in that contract, and the Court has found none, contemplating that a mortgagor or any other entity could possibly be a third-party beneficiary to the contract. Thus, the contract and its requirements are simply not relevant to any harm Mr. Butler may have suffered. See Dunbar v. Wells Fargo Bank, N.A., 853 F. Supp. 2d 839, 848 n.8 (D. Minn. 2012) (Doty, J.) (noting that borrower who is "not a party to the [banks'] agreement . . . lacks standing to challenge it"). If BAC did not perform as promised under the contract, then Fannie Mae may bring a claim against BAC. BAC's alleged failure, however, is not Mr. Butler's to contest or remedy. See, e.g., Welk v. GMAC Mortg., LLC, 850 F. Supp. 2d 976, (D. Minn. 2012) (Schiltz, J.)

("[A] mortgagor cannot challenge a foreclosure on the basis that there might be a dispute between" banks with competing claims to the mortgage and note.) His claim for a violation of the contract between Fannie Mae and BAC must be dismissed. Haubrich, 2012 WL 3612023, at * 3.

### 2. Effect of Previous State-Court Rulings

One of Mr. Butler's arguments in opposition to Fannie Mae's Motion to Dismiss is that, having prevailed on his request for a temporary restraining order in state court which necessarily included a finding that he was likely to succeed on the merits of his claims, this Court may not now determine that he is not likely to succeed on the merits of those claims. Again, Mr. Butler fundamentally misapprehends both the standards for issuing temporary injunctive relief and the nature of the state court's findings.

As an initial matter, the state court did not determine that Mr. Butler was likely to succeed on the merits of his claims. Indeed, Judge Burke noted that "there is nothing in the record to suggest that the claimed unrecorded assignment from BAC to Fannie Mae exists." (Oct. 9, 2012, TRO Order (Gustafson Aff. Ex. 3 [Doc. No. 22-3] at 5.) However, she determined that, "if Mr. Butler is able to substantiate his theory of an unrecorded assignment with further evidence, then he may prevail on the merits." (Id.) She thus found that the likelihood-of-success factor "weighs slightly in favor" of the ex parte TRO. (Id. (emphasis added).)

As Mr. Butler knows, it is a well-settled principle of law that preliminary findings such as whether a TRO should issue are not binding in further proceedings in the case. See Patterson v. Masem, 774 F.2d 251, 254 (8th Cir. 1985) ("[F]indings of fact and

conclusions of law made by a court granting a preliminary injunction are not binding."); see also Haley v. Forcelle, 669 N.W.2d 48, 55 (Minn. Ct. App. 2003) ("The grant of a temporary injunction does not establish the law of the case or constitute an adjudication on the merits."). A TRO is "necessarily preliminary," Nat'l Football League Players Ass'n v. Nat'l Football League, 654 F. Supp. 2d 960, 965 (D. Minn. 2009) (Magnuson, J.), meant to enforce the status quo to allow for fuller consideration of the issues in the future. Bio-Line, Inc. v. Burnman, 404 N.W.2d 318, 320 (Minn. Ct. App. 1987).

As happened in this case, TROs are often entered with no argument or input from the restrained party, and thus the court entering a TRO does not have the benefit of a full argument or record. This Court is not bound by any of Judge Burke's TRO findings, and Mr. Butler's contentions to the contrary are without merit.

### 3. Res Judicata/Collateral Estoppel

Mr. Butler's claims in this lawsuit also fail under the well-settled principles of collateral estoppel and res judicata. Both issue and claim preclusion apply in this situation to bar Mr. Butler from bringing this lawsuit.

#### a. Claim Preclusion

Claim preclusion, also known as res judicata, is a doctrine that "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4402 (2d ed. 2002) (quoting Kaspar Wire Works, Inc. v. Leco Engr'g & Mach., Inc., 575 F.2d 530, 535-36 (5th Cir. 1978)). As the Supreme Court has stated, a judgment "puts an end to the cause of action, which cannot

10

again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." Comm'r v. Sunnen, 333 U.S. 591, 597 (1948).

The "general rule" of claim preclusion is

when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

Id. (quoting Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 352 (1876)). Thus, a Court evaluating whether claim preclusion should bar a party from asserting a claim must examine: first, whether there has been a final judgment on the merits of a cause of action; second, whether the court that issued the judgment was "of competent jurisdiction;" third, whether the person seeking to preclude a claim was a party or a privy to a party in the first litigation; and fourth, whether the claim sought to be precluded either was actually litigated or is a claim that "might have been offered" in the first litigation. Lundquist v. Rice Mem'l Hosp., 238 F.3d 975, 977 (8th Cir. 2001).

There is no dispute that final judgments were entered both in Butler I and in the state eviction action, and that the courts in both of those lawsuits had jurisdiction over the lawsuits. Mr. Butler contends that Fannie Mae was not in privity with BAC in the Butler I lawsuit. He also argues that the claim he advances here could not have been brought in the Butler I litigation and that Fannie Mae prevented him from bringing it in the eviction action.

According to Mr. Butler, because Fannie Mae received the property via quitclaim

11

deed in September 2010, Fannie Mae could not have been in privity with BAC in the Butler I lawsuit, which was not filed until January 2011. As Fannie Mae points out, however, once Fannie Mae's interest in the property was a matter of public record in February 2011, Mr. Butler could have added Fannie Mae to the earlier lawsuit had he believed it appropriate; he is familiar with the procedure for amending a complaint in federal court to raise new allegations. But despite not being a party to the Butler I litigation, Fannie Mae was undoubtedly in privity with BAC in that litigation. Indeed, having received the property via quitclaim deed from BAC, one can hardly imagine a party whose interests would be more aligned with BAC's interests in the validity of the foreclosure sale, as BAC became the owner of the property through that sale.

        **b.     Issue Preclusion**

Issue preclusion, often called collateral estoppel, has five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

Anderson v. Genuine Parts Co., 128 F.3d 1267, 1273 (8th Cir. 1997). Here, Fannie Mae is seeking to preclude Mr. Butler from relitigating the validity of the foreclosure he challenged in Butler I. In response, Mr. Butler argues that the issue in the instant matter is not the issue litigated in Butler I. Plaintiff's argument, however, is belied by the Complaint as well as his arguments in opposition to the current Motion.

      Mr. Butler's contention in this lawsuit is that, because BAC must have assigned

12

the mortgage to Fannie Mae but not recorded it, BAC did not have the power to foreclose on Mr. Butler's home. But the validity of the foreclosure was precisely at issue both in Butler I and in the state eviction proceeding. In fact, the foreclosure's validity was essential to the Butler I final judgment. Indeed, judgment could not have been entered without a determination that the foreclosure was valid. Mr. Butler's claim here is precluded.

Mr. Butler nonetheless argues that newly discovered evidence (the alleged unrecorded assignment from BAC to Fannie Mae) raises questions about the foreclosure found valid in Butler I. The appropriate way to present the Court with such evidence, however, is not by filing a new lawsuit against a different entity. Rather, Rule 60 allows a litigant to seek to reopen a judgment previously entered if the litigant has "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). The difficulty for Mr. Butler, of course, is that if his theory about when Fannie Mae acquired its interest in his mortgage is correct, he should have been able to discover that fact through a search of the MERS database or, at the very least, a search of property records, either before or within a few weeks of filing Butler I. That relief under Rule 60(b)(2) is not likely to be granted, however, does not render a subsequent lawsuit raising allegedly new evidence cognizable or somehow exempt a lawsuit from the principles of res judicata and collateral estoppel.

### 4. Equity

A final reason that Mr. Butler's claim here fails is that a quiet title action is, at

bottom, an action sounding in equity. See Gabler v. Fedoruk, 756 N.W.2d 725, 730 (Minn. Ct. App. 2008) ("Actions to quiet title and determine adverse claims are equitable actions.") (citing Miller v. Hennen, 438 N.W.2d 366, 371 (Minn. 1989)). As such, the person seeking equity must come into court with clean hands. Haubrich, 2012 WL 3612023, at *3 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn. 1937)). Mr. Butler does not dispute that he defaulted on his mortgage by not making the payments he promised to make. He has been living in his house for more than three years without making any payments. As Judge Doty succinctly put it, Mr. Butler "seek[s] equitable relief from a[n] outcome of [his] own creation." Id. Having come into court with unclean hands, Mr. Butler is not entitled to the equitable relief he seeks.

### 5. Declaratory Judgment

A claim for a declaratory judgment cannot stand on its own, but must be grounded in a substantive legal claim. See Essling's Homes Plus, Inc. v. St. Paul, 356 F. Supp. 2d 971, 984 (D. Minn. 2004) (Davis, J.) ("A successful action for declaratory judgment requires a viable underlying cause of action."). Having determined that Mr. Butler cannot bring and has not sufficiently pled any claim for quiet title—the only substantive claim in the Complaint—Mr. Butler's request for a declaratory judgment must likewise be dismissed.

Mr. Butler's allegations do not state a claim on which relief may be granted. The Complaint will be dismissed with prejudice.

## III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

14

**HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Doc. No. 8] is **GRANTED**; and

2. The Complaint [Doc. No. 1-1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 15, 2013                         s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge